[Cite as *In re D.T.*, 2014-Ohio-2495.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:

D.T.,

MINOR CHILD

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. W. Scott Gwin, J.
Hon. John W. Wise, J.

Case No. 2013CA00252

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Stark County Court of Common Pleas, Juvenile Division, Case No. 2013JCV00731 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | June 9, 2014 |
| APPEARANCES: | |

For Appellee

JAMES B. PHILLIPS
Stark County Job and Family Services
221 Third Street, S.E.
Canton, Ohio 44702

For Appellant

EMILY R. TRETTEL
Stark County Public Defender
201 Cleveland Abe SW, Suite 104
Canton, Ohio 44702

*Hoffman, P.J.*

{¶1} Appellant Gino Threats ("Father") appeals the November 27, 2013 Judgment Entry entered by the Stark County Court of Common Pleas, Juvenile Division, which overruled his objections to the magistrate's October 10, 2013 decision, and approved and adopted said decision as order of the court. Appellee is Stark County Job and Family Services ("SCJFS").

STATEMENT OF THE FACTS AND CASE

{¶2} Father is the biological father of D.T. (dob 10/17/03). D.T.'s mother, Brooke Beutler ("Mother"), is deceased, having overdosed on heroin. On July 26, 2013, following Mother's death, SCJFS filed a complaint alleging the child was dependent as he had been present in the home when Mother overdosed. Father, at the time of the filing of the complaint, was incarcerated in the Stark County Jail awaiting transport to state prison after being convicted of domestic violence and intimidation of a witness.

{¶3} The trial court conducted a shelter care hearing on July 29, 2013. Father was transported from jail for the hearing and stipulated to a finding of probable cause for the placement of D.T. in the emergency temporary custody of SCJFS.

{¶4} The trial court conducted an adjudicatory hearing on October 8, 2013, and found D.T. to be dependent. Father was incarcerated in state prison at the time and was not present for the hearing. Charity Armstead, the assessment worker assigned to the case, testified SCJFS became involved with the family following Mother's death as Father was incarcerated. D.T. was with a family, but they could not continue to care for him. Neighbors of Mother and D.T., Steve and Agnes Green, ultimately agreed to let D.T. live with them. Armstead noted Father has a history with SCJFS. Father had

fathered a number of children, but did not have custody of any of them. He never complied with his case plans or completed any services in these matters. Father has an extensive criminal history. He was currently serving a sentence of more than six months.

{¶5} Following the Armstead's testimony, the trial court found D.T. dependent, and immediately proceeded to disposition.

{¶6} Stacy Senff, the on-going case worker assigned to the case, testified D.T. has been living with Steve and Agnes Green since July/August, 2013, and had know the couple for several years. Because the Greens were neighbors of Mother and D.T., D.T. did not have to change his elementary school. The Greens facilitated grief counseling for D.T. prior to SCJFS involvement. D.T. regularly meets with a school therapist. Senff commented D.T. is a very nice little boy and is well adjusted because of the Green's help. The child has formed an attachment to the couple. D.T. told Senff he wants to stay with the Greens and is happy with them. The Greens signed a proposed legal custody statement of understanding which was filed with the trial court on September 19, 2013. The Green's home is clean and appropriate. Senff opined it was in D.T.'s best interest to change legal custody to Steve and Agnes Green. Senff had had no contact whatsoever from any of Father's relatives.

{¶7} The magistrate issued her decision on October 10, 2013. The magistrate recommended legal custody of D.T. be granted to Steve and Agnes Green. Father filed timely objections to the magistrate's decision, which the trial court overruled via Judgment Entry filed November 27, 2013, following an oral hearing.

{¶8} It is from this judgment entry Father appeals, raising as error:

{¶9} "I. THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION TO CHANGE LEGAL CUSTODY AS SCDJFS FAILED TO ENGAGE IN REASONABLE EFFORTS TO REUNIFY.

{¶10} "II. THE TRIAL COURT ERRED IN FINDING IT WAS IN D.T.'S BEST INTEREST TO CHANGE LEGAL CUSTODY TO CUSTODIANS."

I

{¶11} In his first assignment of error, Father contends the trial court erred in granting SCJFS's motion for change of legal custody as the agency failed to make reasonable efforts to reunify.

{¶12} R.C. 2151.419(A)(1) provides:

Except as provided in division (A)(2) of this section, at any hearing held pursuant to section 2151.28, division (E) of section 2151.31, or section 2151.314, 2151.33, or 2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency or private child placing agency that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts. *If the agency removed the child from home during an emergency in which the child*

*could not safely remain at home and the agency did not have prior contact with the child, the court is not prohibited, solely because the agency did not make reasonable efforts during the emergency to prevent the removal of the child, from determining that the agency made those reasonable efforts. In determining whether reasonable efforts were made, the child's health and safety shall be paramount.* (Emphasis added).

**{¶13}** Pursuant to the above statute, the agency which has removed the child must have made reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the home, or make it possible for the child to return home safely. *See In re Hess,* Stark App.Nos.2007CA00262, 2007CA00261, 2008–Ohio–1920, ¶ 46.  However, the statute provides an exception to the reasonable efforts requirement during emergency situations.

**{¶14}** The trial court found, "The reasonable efforts focused on finding a home for youth in light of circumstances of Mother's death and Father's incarceration, so child already 'removed' from his home.  Notwithstanding, Father has a history of violence and SCJFS would want to see him complete certain services prior to any custody to him being considered."  October 10, 2013 Decision.

**{¶15}** Appellant argues the trial court's statement is counterintuitive as SCJFS could not have made reasonable efforts as the agency wanted him to participate in services before it would consider custody.  Appellant explains he could not participate in services due to his incarceration.

**{¶16}** In considering the reasonableness of SCJFS's efforts to maintain the child in the home in a case such as this, we must bear in mind that the agency was trying to

protect D.T. and address the immediate concerns resulting from Mother's death, Father's incarceration, and the inability of the original family caring for him to continue to do so. SCJFS and the trial court focused on the child. Stacy Senff, the on-going caseworker, testified Father had a history with the agency, having had his parental rights terminated with respect to other children. Senff noted Father had never been compliant with services on previous case plans. She added a parent's past history is usually a good indicator of what the person will do in the future.

{¶17} We find the trial court did not err in finding SCJFS made reasonable efforts in this case.

{¶18} Father's first assignment of error is overruled.

II

{¶19} In his second assignment of error, Father argues the trial court erred in finding the change of legal custody was in D.T.'s best interest. We disagree.

{¶20} The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, and a trial court must base its decision on the best interest of the child. *In re N.P.,* 9th Dist. No. 21707, 2004-Ohio-110, at ¶ 23. The factors listed in R.C. 2151.414 may provide some guidance in determining whether a grant of legal custody is in the best interest of the children. *In re T.A.,* 9th Dist. No. 22954, 2006-Ohio-4468, at ¶ 17.

{¶21} In *In re Fulton,* 12th Dist. No. CA2002-09-236, 2003-Ohio-5984, at ¶ 11, the Twelfth District Court of Appeals addressed a legal custody determination between parents in a neglect situation. The *Fulton* Court indicated, when determining the issue of legal custody, courts should consider the totality of the circumstances, including

relevant factors of R.C. 3109.04(F). The *Fulton* Court, however, cautioned there is no statutory mandate those factors must be expressly considered and balanced together before fashioning an award of custody. *Fulton,* 2003-Ohio-5984, at ¶ 11. Accordingly, in legal custody cases, trial courts should consider all factors relevant to the best interest of the child.

**{¶22}** The testimony established D.T. has known the Greens for approximately seven years. He is comfortable with the couple and expressed a desire to remain with them. The Greens have been proactive in helping D.T. deal with the emotional trauma of losing his mother, providing him with grief counseling and on-going therapy. D.T. did not have to change schools and would remain with his friends. Despite the circumstances, D.T. was overall doing well and adjusting to life with the Greens.

**{¶23}** Based upon the foregoing, we find the trial court did not err in finding a change of legal custody was in D.T.'s best interest.

**{¶24}** Father's second assignment of error is overruled.

**{¶25}** The judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.

By: Hoffman, P.J.

Gwin, J. and

Wise, J. concur