[Cite as *In re P.S.*, 2012-Ohio-3431.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
|  | : |  |
|  | : | Hon. Patricia A. Delaney, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| IN RE P.S. | : | Hon. Julie A. Edwards, J. |
|  | : |  |
|  | : | Case No. 2012CA00007 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Appeal from the Stark County Court of
Common Pleas, Juvenile Division Case
No. 2011JCV01404

JUDGMENT:    AFFIRMED

DATE OF JUDGMENT ENTRY:    July 16, 2012

APPEARANCES:

For Father-Appellant:

AMANDA E. JAMES
Stark County Public Defender Office
200 W. Tuscarawas St.
Suite 200
Canton, OH 44702

For SCDJFS-Appellee:

LISA A. LOUY
Stark County Job and Family Services
221 – 3rd St. SE
Canton, OH 44702

*Delaney, P.J.*

{¶1} Father-Appellant G.S. appeals the December 12, 2011 judgment entry of the Stark County Court of Common Pleas, Juvenile Division, granting legal custody of his child to a paternal relative and terminating the involvement of Appellee Stark County Department of Job and Family Services ("SCDJFS").

## FACTS AND PROCEDURAL HISTORY

{¶2} Father is the parent of B.S. SCDJFS became involved with Father and Mother in June 2010 due to the parents' substance abuse issues. SCDJFS established a case plan for the parents that required Mother and Father to complete an evaluation at Northeast Ohio Behavioral Health, to complete an assessment at Quest, to submit to urinalysis and hair follicle test weekly, to work with Help Me Grow, and to attend Goodwill Parenting classes once substance abuse treatment was complete. (T. 8.) Mother and Father were also required to find stable employment and obtain a verification of all prescription medications. *Id.*

{¶3} Mother and Father did not comply with the case plan. Neither parent successfully completed a substance abuse program. Father had positive urine screens for phenobarbital, methamphetamine, opiates, and alcohol. (T. 9.) On July 18, 2011, the Stark County Court of Common Pleas, Juvenile Division awarded legal custody of B.S. to a paternal relative residing in Akron, Ohio.

{¶4} P.S. was born on September 30, 2011. Father is the parent of P.S. When P.S. was born, he tested positive for opiates and benzodiazepines. (T. 11.) He also suffered from a heart condition. *Id.* Mother admitted she obtained limited prenatal care while she was pregnant with P.S. *Id.*

{¶5} P.S. was kept at Akron Childrens' Hospital for five weeks after his birth where the hospital implemented a morphine regimen to help P.S. with his withdrawal symptoms. (T. 12.) When P.S. was released from the hospital, he was prescribed phenobarbital to assist with his withdrawal. *Id.*

{¶6} On October 5, 2011, SCDJFS filed a complaint alleging P.S. to be dependent and/or neglected and sought an order to grant legal custody of the child to a relative. P.S. was committed to the temporary custody of the Akron, Ohio paternal relative and SCDJFS was granted an order of protective custody. The trial court entered pre-adjudicatory orders that Mother and Father submit to hair follicle tests and urinalysis every Monday and Thursday. (T. 11.)

{¶7} The trial court held a dispositional hearing on December 12, 2011. At the hearing, Mother and Father stipulated P.S. was a dependent child.

{¶8} Vicki Mitchell, intake and ongoing family services worker, testified at the hearing. Mitchell testified that SCDJFS did not implement a case plan for Mother and Father for P.S. because the sibling case plan had ended recently in July 2011 and neither parent complied with the sibling case plan. (T. 13.) Mitchell also stated that Father was not willing to go over a case plan at the pre-trial and refused to sign the case plan. (T. 23.) Neither parent has complied with the pre-adjudicatory orders to submit to weekly hair follicle tests or urinalysis. (T. 18.) Mitchell opined that if Father would not comply with the basic court orders, Father would not comply with the case plan. (T. 18.) Mitchell was unaware if Father was currently enrolled in substance abuse treatment. (T. 13.) Father was unsuccessfully terminated from New Destiny

Treatment Center.  *Id.*  While at New Destiny, Father had negative and positive urine screens.  (T. 20-21.)

{¶9}   The parents have not had any visitation with P.S. because they have not complied with the court orders for testing.  (T. 13.)

{¶10} While SCDJFS initially moved to grant legal custody to the Ohio paternal relative, SCDJFS now moved to grant legal custody to a paternal relative residing in Arizona.  (T. 12.)  The Arizona paternal relative was approved by the ICPC Home Study Process.  (T. 12.)

{¶11} The Ohio paternal relative testified.  She also has legal custody of B.S., the sibling of P.S.  She obtained custody of B.S. when he was six months old and he was two years old at the time of the hearing.  (T. 37.)  The Ohio paternal relative stated she could no longer care for P.S. due to her family circumstances and the strict regimen of P.S.'s medical care.  (T. 32.)  P.S. must have a dose of phenobarbital at exactly the same time twice a day or P.S. will suffer from painful withdrawal symptoms.  (T. 30.)  P.S. must be kept in a dark and quiet room to limit his stimulation. (T. 38-39.)   The Ohio paternal relative discussed P.S. with her sister residing in Arizona.  The Arizona paternal relative volunteered to care for P.S.  (T. 32.)

{¶12} The Arizona paternal relative testified that she and her family were prepared to care for P.S.  (T. 43-45.)  She had arranged for P.S.'s medical care, even considering the affect on P.S. to travel across two time zones.  (T. 43.)  She testified she and her sister would work to maintain a relationship between P.S. and B.S.  (T. 44-45.)

{¶13} Father testified at the hearing. He stated he was in a drug treatment plan and would like the opportunity to work on his case plan. (T. 51.)

{¶14} The guardian ad litem recommended legal custody be granted to the Arizona paternal relative.

{¶15} On December 12, 2011, the trial court issued its judgment entry granting legal custody of P.S. to the Arizona paternal relative. The trial court found SCDJFS made reasonable efforts to prevent the removal of P.S. through the sibling case plan and that parents continued to test positive for drugs. The trial court found it was in the best interests of the child to grant legal custody to the Arizona paternal relative and to terminate the involvement of SCDJFS.

{¶16} It is from this decision Father now appeals.

## ASSIGNMENT OF ERROR

{¶17} Father raises one Assignment of Error:

{¶18} "THE JUDGMENT OF THE TRIAL COURT GRANTING LEGAL CUSTODY OF THE MINOR CHILD TO PATERNAL RELATIVES AND TERMINATING SCDJFS INVOLVEMENT WAS AN ABUSE OF DISCRETION."

## ANALYSIS

{¶19} Father argues in his sole Assignment of Error the trial court abused its discretion in granting legal custody of P.S. to the Arizona paternal relative by finding SCDJFS made reasonable efforts to prevent the removal of the child and it was in the best interests of the child.

{¶20} We first note this was a grant of legal custody, not permanent custody. Legal custody does not divest parents of residual parental rights, privileges, and

responsibilities. *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, at ¶ 17. This means Father may petition the court for a modification of custody in the future. *Id.*

{¶21} We recognize that the right to parent one's children is a fundamental right. *Troxel v. Granville*, 530 U.S. 57, 66 (2000); *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997). "However, government has broad authority to intervene to protect children from abuse and neglect." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, at ¶ 28.

{¶22} R. C. 2151.353 (A)(3) states in relevant part: "If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:"

(3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings. A person identified in a complaint or motion filed by a party to the proceedings as a proposed legal custodian shall be awarded legal custody of the child only if the person identified signs a statement of understanding for legal custody that contains at least the following provisions:

(a) That it is the intent of the person to become the legal custodian of the child and the person is able to assume legal responsibility for the care and supervision of the child;

(b) That the person understands that legal custody of the child in question is intended to be permanent in nature and that the person will be responsible as the custodian for the child until the child reaches the age of majority. Responsibility as custodian for the child shall continue beyond the age of majority if, at the time the child reaches the age of majority, the child is pursuing a diploma granted by the board of education or other governing authority, successful completion of the curriculum of any high school, successful completion of an individualized education program developed for the student by any high school, or an age and schooling certificate. Responsibility beyond the age of majority shall terminate when the child ceases to continuously pursue such an education, completes such an education, or is excused from such an education under standards adopted by the state board of education, whichever occurs first.

(c) That the parents of the child have residual parental rights, privileges, and responsibilities, including, but not limited to, the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support;

(d) That the person understands that the person must be present in court for the dispositional hearing in order to affirm the person's intention to become legal custodian, to affirm that the person

understands the effect of the custodianship before the court, and to answer any questions that the court or any parties to the case may have.

{¶23} Unlike in a permanent custody proceeding where a juvenile court's standard of review is by clear and convincing evidence, the standard of review in legal custody proceedings is preponderance of the evidence. *In re A.C.,* 12th Dist. No. CA2006-12-105, 2007-Ohio-3350 at ¶ 14; *In re Nice*, 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (7th Dist. 2001).

*REASONABLE EFFORTS*

{¶24} Pursuant to R.C. 2151.419, the agency that removed the child from the home must have made reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the home, or make it possible for the child to return home safely. The statute assigns the burden of proof to the agency to demonstrate it has made reasonable efforts. The statute provides in determining whether reasonable efforts were made, the child's health and safety is paramount.

{¶25} Various sections of the Revised Code provide that an agency has a duty to make reasonable efforts to preserve or reunify the family unit. For example, R.C. 2151.412 requires the agency to prepare and maintain a case plan; R.C. 2151.414 requires an agency to make reasonable case planning and diligent efforts to assist parents to remedy the problems that caused removal of the child. *In Re C.F.,* 113 Ohio St.3d 73, 2007–Ohio–1104, 862 N.E.2d 816 at ¶ 29. However, the Revised Code does not expressly address what constitutes reasonable efforts. *Id.*

{¶26} This Court has found where the evidence establishes that the agency provided services designed to alleviate the problem that led to the child's removal, made diligent efforts to assist the parents in remedying the problem, and attempted to transition the child back into the family home, the agency has proven reasonable efforts. *In re K.R.,* Stark App. No.2009 CA 00061, 2009-Ohio-4350.

{¶27} Father argues SCDJFS did not make reasonable efforts to alleviate the problems that led to the removal of P.S. from the parental home because SCDJFS did not implement a case plan for Father as to P.S.  Vicki Mitchell, the ongoing family services worker, testified she attempted to implement a case plan for Father at the pre-trial, but he refused to go over the case plan or sign the case plan.  (T. 23.)  As such, there was no case plan in effect for Father as to P.S.

{¶28} The facts and circumstances of this case, however, demonstrate that SCDJFS met its burden to show it made reasonable efforts to alleviate the problems that led to P.S.'s removal.  The family in this case came to the attention of SCDJFS because of the parents' substance abuse issues.  In June 2010, SCDJFS implemented a case plan for Mother and Father as to B.S., the sibling of P.S., to prevent the removal of B.S. from the home.  At the time of their involvement, Mother was pregnant with P.S.  On July 18, 2011, the trial court granted legal custody of B.S. to the Ohio paternal relatives due to the parents' failure to comply with the case plan.

{¶29} P.S. was born 74 days later on September 30, 2011.  P.S. was born addicted to drugs.  SCDJFS obtained pre-adjudicatory court orders to require Mother and Father obtain hair follicle analysis and urinalysis as to their substance abuse issues.  Mother and Father did not comply with these orders.

{¶30} We find no error under the facts and circumstances of this case for the trial court to rely on the sibling case plan to find that SCDJFS made reasonable efforts to eliminate the continued removal of P.S. The circumstances of this case show that since June 2010, SCDJFS attempted to alleviate the substance abuse issues in the home to prevent the removal of B.S. While these attempts were occurring, Mother was pregnant with P.S. On July 18, 2011, the evidence shows Mother and Father did not comply with their case plan as to B.S. and 74 days later, P.S. was born addicted to drugs. After P.S.'s birth, there is evidence to show that Father would not enter into a case plan as to P.S. and would not comply with the pre-adjudicatory orders from the trial court.

*BEST INTERESTS*

{¶31} Father next argues it was not in the best interests of the child to award legal custody of P.S. to the Arizona paternal relative and terminate SCDJFS involvement. In this type of dispositional hearing, the focus must be the best interest of the child. *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188; *In re Nawrocki*, 5th Dist. No. 2004-CA-0028, 2004-Ohio-4208.

{¶32} R. C. 2151.414(D) provides factors to be considered in making a best-interest-of-the-child determination:

In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;

(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶33} A trial court's determination on legal custody should not be overruled absent a showing of an abuse of discretion. *In re* Unger, 5th Dist. No. 04CA6, 2005-Ohio-2414. An abuse of discretion is when the trial court's judgment is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶34} Father argues it is in P.S.'s best interests to remain in Ohio where P.S. can be close to his sibling and his parents. We disagree.

{¶35} The testimony in this case shows that P.S. has two supportive relatives willing to take him in, care for him, and meet his burdensome medical needs. The

Ohio paternal relative testified she was willing to take P.S. as she did with B.S., but due to her increasing familial duties, she recognized her limitations and could not provide P.S. with the care he deserved. (T. 30-31.) She contacted her sister who volunteered to care for P.S. (T. 31.) The Arizona paternal relative testified she was prepared to meet P.S.'s medical needs. (T. 43.) Her family was excited to care for P.S. (T. 42.) She was committed to maintaining the bond between B.S. and P.S. through family visits. (T. 45.) She further understood that she would be required to facilitate visitation between P.S. and his parents if that came to be. (T. 47.)

{¶36} As the Ohio paternal relative stated, "I do wish that anybody that has this situation can go find help and get themselves better. But on the other hand, my position with the child is, is that they can't wait til their mom and dad have an epiphany. Okay. They, they grow every day. And they need somebody to be there when they wake up and when they need their lunch and when they need their diaper changed and they need all of this. * * * And they need, and they need to go on with their lives." (T. 36.)

{¶37} We find no abuse of discretion for the trial court to determine the preponderance of the evidence established it was in P.S.'s best interests to grant legal custody to the Arizona paternal relative and to terminate the involvement of SCDJFS.

**CONCLUSION**

{¶38} For the foregoing reasons, Father's sole Assignment of Error is overruled.

{¶39} The judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.

By: Delaney, P.J.

Gwin, J. and

Edwards, J. concur.

_____
HON. PATRICIA A. DELANEY


_____
HON. W. SCOTT GWIN


_____
HON. JULIE A. EDWARDS


PAD:kgb

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


|  |  |
|---|---|
| IN RE P.S. | : <br> : <br> : <br> :    JUDGMENT ENTRY <br> : <br> : <br> : <br> :    Case No.    2012CA00007 <br> : <br> : |

:
:

For the reasons stated in our accompanying Opinion on file, the judgment of the Stark County Court of Common Pleas, Juvenile Division is AFFIRMED. Costs assessed to Appellant.

_____
HON. PATRICIA A. DELANEY


_____
HON. W. SCOTT GWIN


_____
HON. JULIE A. EDWARDS