[Cite as *In re G.B.*, 2021-Ohio-3621.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| IN THE MATTER OF: | : | Hon. W. Scott Gwin, P.J. |
| G.B. & L.B. | : | Hon. John W. Wise, J. |
|  | : | Hon. Earle E. Wise, J. |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | Case No.   2021 CA 00039 |
|  | : |           2021 CA 00040 |
|  | : |           2021 CA 00043 |
|  | : |           2021 CA 00044 |
|  | : | <u>OPINION</u> |

CHARACTER OF PROCEEDING:     Civil appeal from the Stark County Court of
Common Pleas Court, Juvenile Division,
Case Nos. 2018 JCV 00475 and 2019 JCV
00141

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      October 7, 2021

APPEARANCES:

For – Appellant Mother:            For – Appellant Father

BERNARD HUNT                       DEAN GRASE
2395 McGinty Road N.W.             116 Cleveland Avenue, N.W., Suite 700
North Canton, OH 44720             Canton, OH  44702

Counsel for Custodians             Counsel for SCDJFS
RUSSELL BUZZELLI                   BRANDON WALTENBAUGH
P.O. Box 84                        402 2nd Street S.E.
Wadsworth, OH  44282               Canton, OH  44702

*Gwin, P.J.*

{¶1}   Mother and Father both appeal the March 15, 2021 judgment entry of Stark County Court of Common Pleas, Juvenile Division, granting legal custody of G.B. and L.B. to custodians R.R. and T.R., denying Mother's motion to return and terminate case, and denying Stark County Department of Job and Family Services' ("SCDJFS") motion to extend with regards to L.B.

*Facts & Procedural History*

{¶2}   A.B. ("Mother") is the Mother of four children.  Father M.B. ("M.B.") is the Father of G.B., born on August 31, 2015, and L.B., born on February 18, 2019.  The father of Mother's two older children, K.R.(1) and K.R.(2), is deceased.   R.R. and T.R. ("Custodians") are the paternal aunt and uncle of K.R.(1) and K.R.(2).

{¶3}   On May 10, 2018, SCDJFS filed a complaint alleging K.R.(1), K.R.(2), and G.B. were dependent, neglected, and abused children.  The complaint alleged as follows: SCDJFS received multiple referrals regarding the family dating back to October of 2017; there were concerns about domestic violence in the home and substance abuse by both parents; there were reports that K.R.(1) was acting as the primary caretaker for the younger children; school officials reported several incidents of concern; K.R.(1) sent a group text indicating she was going to commit suicide; SCDJFS contacted Mobile Youth Crisis for K.R.(1); SCDJFS observed multiple adults coming out of the home with large black trash bags; Mother denied substance abuse concerns, but refused to take a drug test; K.R.(2) and G.B. had multiple observable scratches and bruises; Mother was recently charged with OVI and possession of a controlled substance; Father was recently convicted of domestic violence against Mother; both K.R.(1) and K.R.(2) made multiple

concerning statements regarding events and inappropriate circumstances that occurred while living with Mother and Father; and K.R.(1) and K.R.(2) repeatedly expressed concern of returning to their prior home environment.

{¶4} The magistrate held a shelter care hearing on May 11, 2018. On the same day, Custodians filed a motion for legal custody of K.R.(1), K.R.(2), and G.B. The trial court issued a judgment entry on August 1, 2018, finding K.R.(1), K.R.(2), and G.B. dependent. Further, the court found "Mother was not available to care for the children as she has absconded law enforcement and there are warrants out for Mother's arrest." The case then proceeded to disposition. The disposition entry, also filed on August 1, 2018, placed K.R.(1), K.R.(2), and G.B. in the legal custody of Custodians.

{¶5} Mother filed a motion for change of custody and/or motion for visitation with regards to K.R.(1), K.R.(2), and G.B. on December 28, 2018.

{¶6} On February 25, 2019, SCDJFS filed a complaint alleging L.B. was a dependent and neglected child. The complaint alleged, in part, as follows: G.B., K.R.(1), and K.R.(2) are in the legal custody of relatives; the older children witnessed substance abuse by the parents and domestic violence between the parents; Mother tested positive for various substances during her pregnancy with L.B., including cocaine, marijuana, and methamphetamines; Mother stated at the hospital that she was going to live with her grandfather, however, the number she provided to SCDJFS was not a working number; SCDJFS was unable to make contact with Mother again; and both Mother and Father have a criminal history. On February 27, 2019, L.B. was placed in the temporary custody of SCDJFS.

{¶7} On March 20, 2019, Custodians filed a motion for legal custody of L.B. Both Mother and Father stipulated to a finding of dependency as to L.B.; SCDJFS deleted the allegations of neglect. The trial court issued a judgment entry on May 28, 2019, finding L.B. was a dependent child. L.B. was placed in the temporary custody of SCDJFS and SCDJFS placed her with Custodians.

{¶8} SCDJFS filed a motion to extend temporary custody as to L.B. on both December 10, 2019 and July 21, 2020. Mother filed a motion to return L.B. to her and terminate the case with respect to L.B. on August 13, 2020.

{¶9} The trial court conducted a trial on Mother and Custodians' motions on September 1, 2020 and September 15, 2020. The trial court also held an in-camera interview of K.R.(2), as requested by Mother, on November 12, 2020.

{¶10} Mother testified she lost her children in 2018 when her oldest daughter threatened suicide. Mother admitted she was addicted to methamphetamines from November of 2017 to March of 2018. She also admitted that, at the beginning of the case, she misrepresented her substance abuse issues to SCDJFS. In 2017, Father pushed her and yelled at a lot. Both she and Father were abusing drugs. Father has a brain injury and suffers from post-traumatic stress disorder from being the military. After Mother lost the children, she went to Florida to be with her mother. She used cocaine in July of 2018. When her brother overdosed in Ohio, she returned for several months, but then returned to Florida. Mother returned to Ohio to stay in February of 2019.

{¶11} Mother began counseling in 2018 and remains in counseling today for grief/trauma issues and drug abuse. Mother completed drug screens several times per week and stated she was negative every time. Mother described her Vyvanse and

Adderall medications, and stated she informed SCDJFS when those prescriptions changed.

{¶12}  Mother stated she has complied with her case plan.  Mother testified she is currently working, taking care of a hospice patient.  Mother completed the Goodwill parenting program and is going through the home-based visitation program.  She believes she has done everything SCDJFS has asked of her to make the home appropriate.

{¶13}  Mother also attends counseling with K.R.(1) and K.R.(2).  Mother knows that K.R.(1) is angry at her; however, Mother believes this anger is misplaced.  Mother stated she is now clean and sober, and has made significant changes in her life since she lost custody of the children.  She believes it is in the best interest of the children to be returned to her care.

{¶14}  On cross-examination, Mother confirmed there was a no-contact order between her and Father when she got pregnant with L.B.

{¶15}  Jennifer Fire ("Fire") is the supervisor of the Goodwill parenting program. Fire testified that Mother successfully completed the Goodwill parenting program; however, Mother failed on the individual goals portion of the program.  Mother's home was appropriate and, when Fire visited, Mother was utilizing the safety plan put in place by SCDJFS.  Fire had concerns regarding Mother's substance abuse issues because, throughout the program, Mother vacillated from accepting responsibility of that to minimizing it; Fire stated Mother never accepted full responsibility for her substance abuse problems, and blamed it on her ADHD and childhood trauma.  Fire testified that Mother minimized the impact that her substance abuse and domestic violence had on her children.

{¶16} Rosemary Diamond ("Diamond") supervised Mother's visits on September 15 and February 29th between Mother and G.B. She felt the visits went well and Mother was appropriate with G.B.

{¶17} K.M. is Father's mother. She supervised a visit between G.B., L.B., and Mother and Father. She testified that Mother and Father were able to manage the children and G.B. did not want to leave. K.M. has not had any problem with access to either G.B. or L.B. while they have been in Custodians' care.

{¶18} Nicole Hadden ("Hadden") is the ongoing caseworker for L.B. For both Mother and Father, their case plans required they complete parenting assessments, complete assessments at CommQuest, and follow any recommendations. Father complied with the recommendations from his parenting evaluation, as he had to continue counseling and medication services through the VA; comply with the orders of his probation from his domestic violence conviction; and complete substance abuse treatment. Father was recommended for supervised visitation because of the ongoing concerns with his memory and mood dysregulation, and his questionable judgment related to a traumatic brain injury.

{¶19} Mother was required to comply with Summit Psychology for her medication and counseling, complete parenting classes, and attend joint counseling with Father. Mother initially was set up for the color code for approximately six months to monitor her for illegal substances. Mother completed the parenting class, is in counseling each week, and completed the color code drug screens when asked.

{¶20} While Mother testified that she notified Hadden as soon as the doctor increased her medication, Hadden stated that Mother advised her on June 9th by email

that she had a change in medication only after the aide had drug tested her that day.  This concerned Hadden with regards to Mother's long-term sobriety.

{¶21}  When the home-based visits started, L.B. visited alone.  However, when G.B. was added to the visits, Hadden testified that the clutter and things in the home that they previously worked on getting rid of started to come back and it was difficult for Mother and Father to manage both children.  Hadden knew the visits were difficult because of her interactions with Mother and because Hadden supervised some of the visits herself.  For example, Mother's behavior became increasingly erratic during the visits when both G.B. and L.B. were there.

{¶22}  The GAL contacted Hadden after the review hearing in July of 2020, expressing concern about Mother's appearance and behavior in court.  Hadden wrote a letter to Mother's doctor about her concerns with Mother's medication.  Based upon Hadden's review of her notes and the records she received after Mother signed a release of information, it appeared that Mother was asking her doctor for Adderall.  Mother's doctor provided a letter to Hadden stating she is compliant with medication and he did not see a concern prescribing Adderall.

{¶23}  While Hadden believes the primary goal is reunification, she has concerns that need to be addressed.  Her concern for Mother's sobriety still remains, as does her concern about Mother's dishonesty.  With regards to a six-month extension in custody, which would be the last one permissible, Hadden is concerned that would not be enough time for her concerns about Mother to be eliminated, particularly due to the lack of rigorous and intensive substance abuse treatment.  Hadden testified that Mother has a history of being dishonest with her throughout the proceedings.

{¶24} Hadden believes it is in the best interest for Custodians to be granted legal custody of L.B. Hadden has seen L.B. in their home. The home is busy, but Custodians are very attentive to the children and are meeting all of their needs. Custodians have been very cooperative with visitation for Mother and Father. L.B. is very bonded and attached to K.R.(1), K.R.(2), and G.B.

{¶25} Kristin Guardado is the guardian ad litem ("GAL") for all four children.

{¶26} Older siblings K.R.(1) and K.R.(2) described to the GAL a life of chaos and anxiety, including watching Mother and Father do drugs and Father physically abuse Mother. K.R.(1) felt it was her responsibility to care for G.B. When Guardado first met G.B., G.B. would constantly scream. Guardado felt this happened because it was the only way G.B. could get someone to take care of her. Guardado believes it would be detrimental to G.B. to be returned to Mother and Father.

{¶27} As to L.B., Guardado recommends custody to Custodians, with short weekly visits with Mother and Father. Her concerns about L.B. and G.B. being returned to Mother and Father include Mother continuing to lie and Mother's recent jumpy and inappropriate appearance. Guardado testified Mother has worked hard; however, she unable to appropriately parent. For example, Mother suggested she would take L.B. to work with her all day instead of finding daycare or a babysitter. As to Father, he is unable to independently parent. Further, Mother and Father have "lied so many times and misrepresented things it is hard to believe anything they say." Both of Mother's older children are afraid of Father due to his history of domestic violence against Mother. While Guardado thinks Mother can supervise L.B. for a short period of time, she cannot parent her full-time. Father cannot independently parent due to his PTSD and brain injury.

{¶28} During the Goodwill parenting program, Mother and Father had visits with G.B. and L.B. However, those were suspended in July of 2020 based upon the recommendation of Guardado and because of the concerns expressed by the individuals supervising the Goodwill parenting program.

{¶29} Guardado believes Custodians will continue to facilitate a relationship between Mother and the children. She believes it is in the best interest of G.B. and L.B. for Custodians to have legal custody, with Mother and Father having short weekly visits.

{¶30} On cross-examination, Guardado confirmed Mother has completed portions of her case plan. However, Guardado stated the children still have issues, and some of the concerns present with Mother and Father at the beginning of the case still continue on.

{¶31} The trial court also admitted Guardado's August 2020 report into evidence. She believes it is in the best interest of the children for: (1) Custodians to maintain legal custody of K.R.(1), K.R.(2), and G.B.; (2) Custodians to be granted legal custody of L.B.; (3) Mother's motions to terminate and return to be denied; (4) Mother to continue to participate in therapeutic visits with K.R.(1) and K.R.(2); (5) K.R.(1) and K.R.(2) to not be around Father until their counselor feels it is appropriate; (6) Mother and Father to have weekly 2-hour visits with L.B. and G.B.; and (7) Father not to be left unsupervised with the children.

{¶32} Guardado reports that the children are thriving in their current home. They are all very close.

{¶33} Guardado included many details in her report, but concluded that she has concerns about returning any of the children to Mother. This is due to Mother and Father's

dishonesty throughout the case and their inability to take responsibility for their actions and instead blame others. Guardado stated the parties failed to alleviate the risks that were present at the time of the removal.

{¶34} Amanda Van Buren ("Van Buren") is a family coach at Goodwill parenting's home-based parenting program. She works with Mother and Father weekly. One of the goals in the program to promote safety was for Mother and Father to move their bedroom up by L.B. Van Buren stated this was not Mother's idea, despite Mother's testimony that it was. Mother recently has been acknowledging her past triggers; however, Father has not.

{¶35} Van Buren stated the visits are inconsistent. While some visits go smoothly, sometimes the parents would rather discuss their own issues instead of spending time with the children. Initially, Van Buren and the parents addressed some safety concerns in the home. Van Buren recently had to address these same issues in the home in July. Van Burden also stated there are times where Mother and Father failed to adequately supervise the children. Van Buren testified Mother's behavior is inconsistent, and has become more erratic since July. Her main concerns regarding the safety of the children are: consistent demeanor, ability to supervise the children, and substance abuse.

{¶36} Jessica Skrzypiec ("Skrzypiec") is a licensed clinician who did an assessment on Mother and continues to be her counselor. Her diagnoses were adjustment disorder, ADHD, and major depressive disorder. Mother was not truthful during her initial assessment about her substance abuse. However, during treatment in March of 2019, Mother admitted abusing her prescription Adderall. Skrzypiec stated Mother's treatment has progressed well and she is not currently worried about Mother

abusing medication because Mother has done well and has done everything Skrzypiec has asked her to do.

{¶37}  On cross-examination, Skrzypiec confirmed that on August 28, 2020, Mother was very upset because she lost her job.  However, Mother testified on September 1, 2020 that she was still employed; thus, Mother lied to the court.

{¶38}  R.R. is the current custodian of the children and has been since February of 2018.  R.R. will follow any orders of the court with regards to this case.  R.R. believes it is in the best interest of the children for R.R. and her husband to have legal custody of the children, but also believes that Mother should have a relationship with G.B. and L.B.

{¶39}  The trial court issued an extensive judgment entry on March 15, 2021.

{¶40}  The trial court found the GAL's testimony credible and noted it took her report into consideration in its decision.  Additionally, the trial court stated it agreed with the concerns reported by the GAL.

{¶41}  The trial court found Mother's testimony questionable.  As the first day of trial progressed, "Mother's testimony became more garbled and lacking in a clear direction.  It was as if Mother placed some marbles or cotton in her mouth during the break session. Her recollection of events, especially as to time, degraded throughout cross-examination."  The trial court cited several specific portions of Mother's direct and cross-examination to illustrate its point.

{¶42}  The trial court found the credible testimony and the in-camera interview with K.R.(2) clearly establish that K.R.(1), K.R.(2), and G.B. were subjected to extremely traumatic events while living with Mother, including missing meals, witnessing domestic violence, witnessing drug abuse, suffering sexual abuse, and having their educational

needs neglected. However, Mother continues to deny or downplay this trauma, and even testified that her children's "stories" changed, questioning their credibility.

{¶43} The trial court found the credible evidence bolstered the following concerns of the GAL: that Mother has not been truthful throughout the case; that Mother does not accept responsibility for the traumatic experiences of her children; and Mother continues to use excuses. Though Mother testified she is "in a different place completely" than before, the trial court stated the balance of the testimony does not support Mother's assertion.

{¶44} The trial court determined the evidence demonstrates Mother and Father are not adequately able to supervise the children. For example, Fire testified Mother failed in her individual goals and she still had concerns about Mother because of her drug use and Father because of the domestic violence. Further, Van Buren gave credible testimony that Father continues to have issues in discussing his triggers, and the visits with Mother and Father were inconsistent, and during one visit, G.B. escaped from the home because the door was not locked and she was not being adequately watched. The trial court also noted Skrzypiec's testimony that Mother was dishonest about her substance abuse, and that Mother is frequently overwhelmed.

{¶45} The trial court found neither Mother nor Father are suitable to care for any of the children at this time, and the motion to extend is not in L.B.'s best interest. Further, the credible evidence establishes that R.R. and T.R. are capable and willing to care for and support all four of the children, and put the best interest of the children ahead of their own interests.

{¶46} The trial court then did an extensive review of the relevant best interest factors contained in R.C. 3109.04(F)(1)(a-j), and addressed them as follows: (a) Mother testified she wants legal custody of all four children; however, the court questioned the sincerity of this request; (b) the interview with K.R.(2) confirmed the concerns of the GAL and did not support Mother's testimony that K.R.(2) wanted to live with her; (c) the children are bonded with each other and bonded to R.R. and T.R., while there is no healthy bond between the children and either Mother or Father; (d) the children are doing well in the home of Custodians, as this is a safe, loving, and healthy environment; however, neither Mother and Father could meet the emotional, educational, or basic needs of the children and there is a legitimate concern that the return of any of the children to them would place them at risk physically and emotionally; (e) Father is 100% disabled due to a traumatic brain injury, is not able to care for any of the children, and has committed acts against Mother in the past; Mother and Father have used drugs; Mother's presentation in court was "off" and she appeared to be suffering from some physical or mental ailment; Mother struggles with mental health stability and has trouble telling the truth; (f) Custodians appear most likely to facilitate visitation; Mother did not follow orders in other cases and was not truthful with the GAL; and (g) Mother indicated child support is not current.

{¶47} The trial court concluded, upon review of the testimony presented and review of the above-factors, it is in the best interest of G.B. and L.B. for Custodians to be granted legal custody.

{¶48} Further, it would not be in the best interest of G.B. or L.B. for Mother to be named their legal custodian. Finally, it would not be in the best interest of L.B. to grant the motion to extend.

**{¶49}** As to visitation, the trial court found it would be detrimental to allow any additional visits with the children for Mother or Father other than as recommended by the GAL in her report.

**{¶50}** The trial court named R.R. and T.R. the legal custodians of G.B. and L.B., and denied Mother's motions. The trial court also denied SCDJFS' motion to extend with regard to L.B.

**{¶51}** Mother appeals the March 15, 2021 judgment entry of the Stark County Court of Common Pleas, Juvenile Division, and assigns the following as error.

**{¶52}** "I. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR A CHANGE OF LEGAL CUSTODY AND FOR A MOTION TO RETURN AND TERMINATE.

**{¶53}** II. THE TRIAL COURT'S JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND VIOLATED MOTHER'S DUE PROCESS RIGHTS."

**{¶54}** Father also appeals the March 15, 2021 judgment entry and assigns the following as error:

**{¶55}** "I. THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING LEGAL CUSTODY TO A NON-PARENT IN VIOLATION OF THE DICTATES OF IN RE PERALES, 52 OHIO ST.2D 89; O.R.C. 3109.04(F)(1) AND/OR 2151.414(D). THEREFORE, SUCH DECISION WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."

*Legal Custody*

**{¶56}** The award of legal custody is "not as drastic a remedy as permanent custody." *In re L.D.*, 10th Dist. Franklin No. 12AP-985, 2013-Ohio-3214. This is because

the award of legal custody does not divest parents of their residual rights, privileges, and responsibilities. *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188.

{¶57} Before awarding legal custody to a non-parent, a trial court must ordinarily make a finding that each parent is unsuitable. *In re L.P.*, 5th Dist. Muskingum No. CT2016-0045, 2017-Ohio-52, citing *In re Hockstock*, 98 Ohio St.3d 238, 2002-Ohio-7208. This requirement does not apply, however, in cases involving abuse, neglect, or dependency. *Id.* The Ohio Supreme Court has held that, "[a] juvenile court adjudication of abuse, neglect, or dependency is a determination about the care and condition of a child and implicitly involves a determination of the unsuitability of the child's custodial and/or noncustodial parents." *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188. Thus, "[w]hen a juvenile court adjudicates a child to be abused, neglected, or dependent, it has no duty to make a separate finding at the dispositional hearing that a noncustodial parent is unsuitable before awarding legal custody to a nonparent." *Id.*

{¶58} In this case, both G.B. and L.B. were adjudicated dependent.

{¶59} R.C. 2151.353(A) states, in pertinent part,

If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:

    * * *

(3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings * * *.

{¶60}   A trial court "must have wide latitude in considering all the evidence" and a custody decision will not be reversed absent an abuse of discretion.  *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159, citing *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988).  As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses.  Our role is to determine whether there is relevant, competent, and credible evidence upon which the finder of fact could base its judgment.  *Cross Truck Equip. Co. v. The Joseph A. Jeffries Co.*, 5th Dist. Stark No. CA5758, 1982 WL 2911 (Feb. 10, 1982).  Accordingly, judgments supported by some competent and credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.  *C.E. Morris Co. v. Foley Constr.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶61}   Unlike in a permanent custody proceeding where a juvenile court's standard of review is by clear and convincing evidence, the standard of review in legal custody proceedings is a preponderance of the evidence.  *In re S.D.*, 5th Dist. Stark Nos. 2013CA0081, 2013CA0082, 2013-Ohio-5752.

{¶62}   Issues relating to the credibility of the witnesses and the weight to be given to the evidence are primarily for the trier of fact.  *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984).  Deferring to the trial court on matters of credibility "is crucial in a child custody case, where there may be as much evidence in the parties' demeanor and attitude that does not translate to the record well."  *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159

*Mother's & Father's Assignments of Error*

{¶63} Mother contends the trial court's decision to grant legal custody to Custodians was against the manifest weight of the evidence because she was compliant with her case plan. Mother argues she completed her case plan services, has employment, and is medically compliant. She also contends the trial court's finding it was in the best interest of the children for Custodians to be awarded custody was against the manifest weight of the evidence because she was bonded to the children and completed her case plan. Father similarly argues the trial court's determination was against the manifest weight of the evidence because Mother completed her case plan, and because both Mother and Father made progress in remedying the conditions that led to the removal of the children.

{¶64} We disagree with Mother and Father.

{¶65} The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, and a trial court must base its decision on the best interest of the child. *In re C.R.,* 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188; *In re P.S.,* 5th Dist. Stark No. 2012CA00007, 2012-Ohio-3431. When determining the issue of legal custody, the trial court should consider the totality of the circumstances. *In re D.T.,* 5th Dist. Stark No. 2013CA00252, 2014-Ohio-2495. Trial courts should consider all factors relevant to the best interest of the child. *Id.* This may include the best interest factors contained in R.C. 2151.414(D) and/or R.C. 3109.4(F), including: the wishes of the child (expressed to the court or through the GAL) and the child's parents; the child's interactions and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child; the custodial history of the child; the child's need

for a legally secure placement; the child's adjustment to their home, school, and community; the mental and physical health of all persons involved in the situation; and the person more likely facilitate court-approved parenting time rights or visitation.

{¶66} Mother and Father contend that Mother has completed all her case plan requirements. However, the successful completion of a case plan is not dispositive on the issue of reunification. *In re W.A.J.*, 8th Dist. Cuyahoga No. 99813, 2014-Ohio-604. While it may be in Mother's best interest to complete the case plan, this is only one factor for a trial court to consider what is in the best interest of the child, and, "in legal custody cases, trial courts should consider all factors relevant to the best interest of the child." *In the Matter of D.P. and G.P.*, 5th Dist. Stark No. 2010CA00348, 2011-Ohio-1907.

{¶67} Where a parent has participated in his or her case plan and completed most or all of the plan requirements, a trial court may still properly determine that such parent has not substantially remedied the problems leading to agency involvement. *In the Matter of A.L. and J.L.*, 5th Dist. Guernsey No. 11 CA 23, 2012-Ohio-481. In this case, the GAL testified that while Mother has substantially completed her case plan, Mother failed to alleviate the risks present at the time of removal and the same concerns present at the beginning of the case still continue today.

{¶68} The issue in this case is whether the preponderance of the evidence demonstrated it was in the best interest of G.B. and L.B. to grant legal custody to Custodians. The trial court issued a detailed, thorough, and well-reasoned analysis as to why it determined it was in the best interest of G.B. and L.B. to grant legal custody to Custodians and deny Mother's motions. Further, though Mother and Father contend they

substantially remedied any problems leading to agency involvement, the testimony and evidence presented at the hearing do not support this conclusion.

{¶69} We find the determination by the trial court is supported by competent and credible evidence.

{¶70} Mother had no contact with G.B. for an extended period of time while she was in Florida. Fire has continued concerns about Mother's substance abuse because she never accepted responsibility, and instead blamed it on her medical conditions and/or childhood trauma. Hadden similarly has concerns that remain about Mother's long-term sobriety, particularly due to the Mother's increasingly erratic behavior throughout the proceedings. The GAL also has concerns that remain about Mother's sobriety because of her recent jumpy and inappropriate appearance. Van Buren described Mother's behavior as inconsistent throughout the case, and more erratic since July. Van Buren has concerns about Mother's substance abuse. The trial court found Mother's testimony about her remedying of concerns to not be credible and stated Mother's testimony was garbled, lacked direction, and her recollection was not clear.

{¶71} Hadden and the GAL testified to Mother's dishonesty and inability to take responsibility for her actions throughout the proceedings, and stated she had not remedied these concerns. Skrzypiec confirmed Mother initially lied to her about her substance abuse and lied to the court about her employment.

{¶72} Additionally, multiple witnesses had concerns about the visits G.B. and L.B. had with Mother and Father. Hadden stated it was difficult for Mother and Father to manage both children. The GAL stated Mother could do short visits with G.B. and L.B.,

but could not manage them full-time. Van Buren stated the visits were inconsistent, and she had concerns about both Mother and Father's ability to supervise the children.

{¶73} Father is 100% disabled, with a traumatic brain injury. The undisputed and unrebutted evidence from all witnesses in this case is that he cannot be left alone to parent the children.

{¶74} Hadden testified it is in the best interest of G.B. and L.B. for Custodians to be granted legal custody. Hadden describes Custodians as loving, cooperative, attentive, and bonded to the children. Further, both G.B. and L.B. are very bonded to each other, and to their half-siblings, who also live with Custodians. The GAL testified that while Mother has worked hard, she is unable to appropriately parent. G.B. and L.B. are thriving in Custodians' home, and they, along with their half-siblings, are very close. Thus, it is in the best interest of both G.B. and L.B. for Custodians to be awarded legal custody, with Mother and Father having short weekly visits.

{¶75} Mother also claims the trial court did not consider the testimony about her good visits, her continued counseling, and case plan compliance in its decision. However, while there was testimony about her case plan compliance and several good visits, there was also testimony by multiple witnesses that the visits were inconsistent and many concerns still remained. As this Court has previously stated, the trial court may believe all, part, or none of the testimony of any witness who appears before it. *Rogers v. Hill*, 124 Ohio App.3d 468, 706 N.E.2d 438 (4th Dist. 1998). Further, as discussed above, Mother's compliance with her case plan is only one factor to consider in the best interest determination.

*Six-Month Extension*

{¶76} Mother argues the trial court committed error in denying SCDJFS' motion for six-month extension. We disagree.

{¶77} A trial court's decision to grant or deny an extension of temporary custody is a discretionary one. See R.C. 2151.415(D)(1) and (2). Pursuant to R.C. 2151.415(D)(1), a trial court can extend temporary custody for six months only if it finds, by clear and convincing evidence, (1) that such extension is in the best interests of the child, (2) that there has been significant progress on the case plan, and (3) that there is reasonable cause to believe that the child will be reunified with a parent or otherwise permanently placed within the period of extension. See *In re McNab.*, 5th Dist. Tuscarawas Nos. 2007 AP 11 0074, 2007 AP 11 0075, 2008-Ohio-1638.

{¶78} While Mother has made significant progress on her case plan, as detailed above, the concerns that existed at the beginning of the case still exist. Though the motion was made by SCDJFS, Hadden testified she now believes it is in the best interest of L.B. for the motion to be denied and legal custody be granted to Custodians. This is because Hadden believes that a six-month extension is not enough time for her concerns about Mother to be eliminated and there is not reasonable cause to believe L.B. will be reunified with Mother within six months, particularly due to the lack of rigorous and intensive substance abuse treatment.

{¶79} As discussed above, the evidence before the trial court supports the conclusion that an extension of temporary custody was not in L.B.'s best interest, but, rather, L.B.'s interests were best served by award of legal custody to Custodians.

*Due Process*

{¶80}  In the title of her second assignment of error, Mother asserts the trial court's decision violated her due process rights.  However, Mother makes no argument in the body of her brief as to how or why her due process rights were violated.

{¶81}  "If an argument exists that can support [an] assignment of error, it is not this court's duty to root it out."  *Thomas v. Harmon*, 4th Dist. Lawrence No. 08CA17, 2009-Ohio-3299, quoting *State v. Carman,* 8th Dist. Cuyahoga No. 90512, 2008-Ohio-4368.  "It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal." *Catanzarite v. Boswell*, 9th Dist. Summit No. 24184, 2009-Ohio-1211.  Therefore, "[w]e may disregard any assignment of error that fails to present any citations to case law or statutes in support of its assertions."  *Frye v. Holzer Clinic, Inc.*, 4th Dist. Gallia No. 07CA4, 2008-Ohio-2194; See also App.R. 16(A)(7); App.R. 12(A)(2); *State v. Norman*, 5th Dist. Guernsey No. 2010-CA-22, 2011-Ohio-596; *State v. Untied*, 5th Dist. Muskingum No. CT2006005, 2007-Ohio-1804.

{¶82}  As pointed out by SCDJFS, Mother has made no argument to support this assertion, nor has she supported her allegations with references to the record or citations to authority to support a finding that the trial court violated her due process rights.  Appellate Rule 16(A)(7) requires an appellant to include in his or her briefs, "* * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions * * *."  We may not create an argument for Mother as to why her due process rights were violated.  See *State v. Carter,* 5th Dist. Richland No. 2020-CA-0031, 2021-Ohio-358.

*Conclusion*

**{¶83}** Based on the foregoing, we find the trial court did not commit error in awarding legal custody of L.B. and G.B. to Custodians or in denying Mother's motion to return and terminate with regards to L.B. and G.B.  Further, we find the trial court did not commit error in denying the motion for six-month extension with regards to L.B.

**{¶84}**  Accordingly, both Mother and Father's assignments of error are overruled.

**{¶85}**   The March 15, 2021 judgment entry of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.

By Gwin, P.J.,

Wise, John, and

Wise, Earle J., concur