**[Cite as *In re M.P.*, 2025-Ohio-601.]**

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### HANCOCK COUNTY

IN RE:

**CASE NO. 5-24-32**

    M.P.,

**ALLEGED NEGLECTED AND**     **O P I N I O N**
**DEPENDENT CHILD.**

IN RE:

**CASE NO. 5-24-33**

    A.P.,

**ALLEGED NEGLECTED AND**     **O P I N I O N**
**DEPENDENT CHILD.**

IN RE:

**CASE NO. 5-24-34**

    V.H.,

**ALLEGED NEGLECTED AND**     **O P I N I O N**
**DEPENDENT CHILD.**

**Appeals from Hancock County Common Pleas Court**
**Juvenile Division**
**Trial Court Nos. 2022 AND 0051, 2022 AND 0052, 2022 AND 0053**

**Judgments Affirmed**

**Date of Decision: February 24, 2025**

**APPEARANCES:**

    *Alison Boggs* **for Appellant**

    *Justin Kahle* **for Appellee**

**WALDICK, P.J.**

{¶1} Mother-appellant, Mindy H. ("Mother"), brings this appeal from the Hancock County Common Pleas Court, Juvenile Division, granting legal custody of her children to relatives. On appeal, Mother argues that the trial court's judgment was against the manifest weight of the evidence, and that the trial court erred by determining that appellee Hancock County Child Protective Services Unit ("the Agency") used reasonable efforts to reunify her with the children. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

{¶2} Mother has three children that are the subjects of these cases: V.H., born in 2012, M.P., born in 2016, and A.P., born in 2018.

{¶3} In 2019, the Agency opened a case with Mother and the children that lasted until 2021. During that time, the children were placed with M.P. and A.P.'s paternal aunt and uncle, Mathew and Jaelea. At the conclusion of the prior case, the children were returned to Mother.

{¶4} On June 25, 2022, the children were removed from Mother's care when Mother was arrested on an outstanding warrant from Wyandot County. At the time of Mother's arrest, the children were in "deplorable living conditions." They were living in a residence with no water or electricity for several weeks. The children were dirty, there was mold in the home, and the home had a "horrid" odor. One of the children was supposed to wear leg braces but Mother threw them away. The Agency filed a complaint alleging the children were neglected and dependent. The Agency again placed the children with Mathew and Jaelea.

{¶5} Mother ultimately admitted that the children were dependent as alleged. In exchange for Mother's admission, the neglect allegation was dismissed by the Agency. The children were then placed in the temporary custody of the Agency and a case plan was adopted requiring mother to: 1) obtain and maintain safe and stable housing; 2) attend parenting classes; 3) refrain from criminal activity; and 4) obtain a substance abuse assessment, a mental health assessment, and then comply with the recommendations.

{¶6} As the case progressed, the Agency filed a motion for contempt alleging that Mother was not engaging in her mental health treatment or parenting classes, and that she was not regularly providing contact information to the Agency. A

hearing was held on the Agency's motion wherein Mother admitted she was in contempt. The trial court found her in contempt and imposed jail time and a small fine; however, the jail term and fine were suspended on the condition that Mother attempt to comply with the case plan.

{¶7} On May 24, 2023, the Agency filed a motion to place the children in the Legal Custody of Mathew and Jaelea and to terminate the Agency's involvement. Mother opposed the Agency's motion, and filed her own motion for legal custody of the children.

{¶8} On September 7, 2023, a hearing was held on the pending motions. Testimony at the hearing indicated that Mother had been living at the "city mission" off and on for the prior year and that she had not obtained safe and stable housing.[1] Mother also had been inconsistent in engaging with mental health services. Meanwhile, the children were thriving in their placement. Mathew and Jaelea both desired to obtain legal custody of the children.

{¶9} In addition to the testimony, the GAL recommended that the trial court grant legal custody of the children to Mathew and Jaelea. The father of M.P. and A.P. was also in favor of the motion.

{¶10} On September 11, 2023, the trial court filed a judgment entry granting the Agency's motion for legal custody of the children to Mathew and Jaelea. Mother appealed from the trial court's judgment to this Court, arguing, *inter alia*, that the

---

[1] Further, testimony indicated that in October of 2022, Mother was found unconscious at the Wyandot County Fairgrounds.

trial court failed to make a finding that the Agency had engaged in reasonable efforts to support reunification. The Agency conceded that the trial court did not make a reasonable efforts finding. We reversed the case in an accelerated opinion for the trial court to hold a hearing on the matter and make any reasonable efforts findings, if appropriate. *See In Re M.P.*, 5-23-39 (3d Dist.) (unpublished).

{¶11} On July 16, 2024, the trial court held a hearing on the remanded issue. After the hearing, the trial court concluded that the Agency had made reasonable efforts to support reunification. The trial court reiterated that it was in the best interests of the children for legal custody to be awarded to Mathew and Jaelea. Final judgment entries were filed the same day as the hearing, July 16, 2024. It is from these judgments that Mother appeals, asserting the following assignments of error for our review.

### First Assignment of Error

**The trial court's decision is against the manifest weight of the evidence. Appellee did not use reasonable efforts to prevent the continued removal of the minor children and failed to prove by clear and convincing evidence that the court should grant its motion for legal custody of the minor children to the paternal aunt and uncle.**

### Second Assignment of Error

**The trial court erred when it failed to include in its entry written findings of fact and conclusions of law and any finding that appellee used reasonable efforts to reunify the children with Miss H[.]**

-5-

*First Assignment of Error*

**{¶12}** In her first assignment of error, Mother argues that the trial court's determination to award legal custody of the children to Mathew and Jaelea was against the manifest weight of the evidence. Separately, Mother also argues that the trial court erred by finding that the Agency used reasonable efforts to support reunification.

Standard of Review

**{¶13}** An award of legal custody will not be reversed if the judgment is supported by a preponderance of the evidence.[2] *In re A.D.*, 2023-Ohio-2442, ¶ 62 (3d Dist.). Preponderance of the evidence entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value. *Id.* Thus, our standard of review is whether a legal custody decision is against the manifest weight of the evidence.

**{¶14}** In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new

---

[2] Mother argues that the trial court's judgment was not supported by clear and convincing evidence; however, that standard is utilized when determining permanent custody cases. This case concerns legal custody, and has a lower burden of proof.

hearing ordered. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

Relevant Authority

{¶15} Following an adjudication of an abused, neglected, or dependent child, R.C. 2151.353(A) provides the juvenile court with certain dispositional alternatives for the child. Among the juvenile court's dispositional alternatives is granting legal custody of the child to either parent or to an individual who files a motion requesting legal custody. R.C. 2151.353(A); Juv.R. 34(D).

> Revised Code 2151.011(A)(21) defines "legal custody" as follows:
>
> a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities. An individual granted legal custody shall exercise the rights and responsibilities personally unless otherwise authorized by any section of the Revised Code or by the court.

{¶16} Notably, the award of legal custody is not as "drastic a remedy as permanent custody." *In re J.B.*, 2016-Ohio-2670, ¶ 32 (3d Dist.). Unlike granting permanent custody, the award of legal custody does not divest parents of their residual parental rights, privileges, and responsibilities. *In re C.R.*, 2006-Ohio-1191, ¶ 17. Significantly, the parents can generally petition the court for a custody

-7-

modification in the future. *In re L.D.* at ¶ 7. Thus, "a parent's right to regain custody is not permanently foreclosed." *In re B.P.*, 2015-Ohio-5445, ¶ 19 (3d Dist.).[3]

{¶17} At a dispositional hearing involving a request for legal custody, the focus is on the best interest of the child. *In re P.S.*, 2012-Ohio-3431, ¶ 31 (5th Dist.); R.C. 2151.42(A). Revised Code 2151.353(A)(3) does not list specific factors a court should consider in deciding what is in the child's best interest pursuant to the requested disposition of legal custody. *In re B.P.* at ¶ 20.

{¶18} Although, no specific factors must be followed in a case involving the dispositional alternative of legal custody, we have previously concluded that juvenile courts may be guided by the factors listed in R.C. 2151.414(D)(1) (the permanent-custody factors) or R.C. 3109.04(F)(1) (factors employed in private-custody disputes) since they are both purely instructive. *In re K.B. and G.B.*, 2021-Ohio-3273, ¶ 50 (3d Dist.).

{¶19} In addition to the foregoing factors, the juvenile court must also liberally interpret and construe R.C. Chapter 2151 so as to effectuate the General Assembly's expressed purpose when considering which situation will best promote the child's "care, protection, and mental and physical development," understanding that the child should only be separated from his or her parents "when necessary for

---

[3] The Supreme Court of Ohio has held that a finding of parental unfitness is not a prerequisite to a disposition of legal custody where a juvenile court is making a custody determination under R.C. 2151.353 between a nonparent and parent. *In re C.R.* at ¶ 21; *see also In re M.H.*, 2014-Ohio-1485, (3d Dist.) ("[A] trial court is not required to make a separate 'unsuitability' finding at disposition, because an adjudicatory finding that a child is abused, neglected or dependent implicitly contains an unsuitability finding.").

the child's welfare or in the interests of public safety." *In re C.W.*, 2010-Ohio-2157, at ¶ 11, citing R.C. 2151.01(A).

Analysis

{¶20} In its judgment entries, the trial court conducted the following analysis in determining that it was in the children's best interests for legal custody to be awarded to Mathew and Jaelea:

> [T]he children have remained out of the home for a majority of the case; Father has not been active in the case or case plan services; Mother has failed to obtain safe and stable housing; CPSU has not had a home visit in Mother's home through the case; the children are bonded to the caregivers, the children want to remain with their caregivers; and the minor children need permanency and stability in their lives.

{¶21} Mother argues that the trial court's analysis is flawed in multiple respects. She contends that the trial court did not specifically "weigh the evidence against any best interest factors." She also contends that some components of Mother's case plan were fully completed, and she contends that the Agency failed to engage in reasonable efforts to support reunification.

{¶22} Contrary to Mother's argument, as we stated previously, there are no specific factors for a trial court to consider when determining a motion for legal custody. We have held that a trial court can be guided by the factors listed in R.C. 2151.414(D)(1) (the permanent-custody factors) and/or R.C. 3109.04(F)(1) (private custody factors), but both are merely instructive. *In re L.P.*, 2013-Ohio-2607, ¶ 22

(3d Dist.). Nevertheless, the trial court's succinct analysis specifically touched on numerous "instructive" factors.

**{¶23}** For example, the trial court mentioned the children's relationships with the relevant caregivers as supportive of granting the motion (2151.414(D)(1)(a)). In addition, the trial court mentioned the custodial history of the children (2151.414(D)(1)(c)) as being supportive of granting the motion. The trial court also mentioned the children's need for legally secure placement (2151.414(D)(1)(d)). Thus although the trial court did not specifically cite the statutory subsections, the trial court did consider the instructive factors. Further, although not mentioned by the trial court, the GAL and the father of M.P. and A.P. supported the legal custody motion, implicating 2151.414(D)(1)(b).

**{¶24}** After reviewing the record, we do not find that the trial court clearly lost its way or created a manifest miscarriage of justice by granting legal custody of the children to Mathew and Jaelea. Mother largely would not engage with the case plan until forced by a contempt motion. She did not obtain suitable, stable housing. She did not complete mental health services as required. The evidence supports the trial court's finding that it was in the children's best interests to be placed in the legal custody of Mathew and Jaelea. Thus Mother's argument on this issue is not well-taken.

**{¶25}** Next, Mother argues that the trial court erred by determining that the Agency engaged in reasonable efforts in this case to support reunification. "[V]arious sections of the Revised Code refer to the agency's duty to make

reasonable efforts to preserve or reunify the family unit," most notably R.C. 2151.419. *In re C.F.*, 2007-Ohio-1104, ¶ 29. Revised Code 2151.419(A)(1) requires a trial court to determine whether a children's services agency "made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home."

{¶26} Here, the trial court specifically made the following findings in its final judgment entries regarding the Agency's efforts:

> The Court hereby finds that CPSU has made reasonable efforts to reunify the children with parents in that they have provided to both Mother and Father the following: parents mental health and substance abuse referrals and counseling, parent education, case management, home visits, information and referrals, housing referrals, financial assistance, gas cards, a home study, a relative placement and visitation.

In addition to the trial court's findings, we would note that the Agency actually went so far as to file a motion for contempt against Mother for her failure to engage with the case plan.

{¶27} Mother argues that the Agency did not make reasonable efforts essentially because they filed for legal custody after only "fourteen and a half months." She argues that she was making progress on the case plan. She also argues that she had been on probation and that probation prevented her from completing some of her case plan.

**{¶28}** In evaluating Mother's arguments, it is important to emphasize that when considering reasonable efforts, the issue is not whether there was anything more that the Agency could have done, but whether the case planning and efforts were reasonable and diligent under the circumstances of this case. *In re Leveck,* 2003-Ohio-1269, ¶ 10 (3d Dist.). Here the Agency connected Mother to numerous services that Mother either did not engage with or delayed engaging with despite this being Mother's second case with the Agency.

**{¶29}** We do not find under the circumstances of this case that the Agency failed to engage in reasonable efforts to support reunification, particularly given that the Agency went so far as to try to force Mother to work on her case plan via a contempt motion. Therefore, Mother's first assignment of error is overruled.

*Second Assignment of Error*

**{¶30}** In Mother's second assignment of error, she argues that the trial court "failed to include in its entry written findings of fact and conclusions of law" with regard to the issue of reasonable efforts. Mother's argument is inaccurate.

**{¶31}** This case was remanded to the trial court on a prior occasion to address the reasonable efforts issue. The trial court held a hearing specifically on that issue then filed a judgment entry finding that the Agency had engaged in reasonable efforts, listing some of those efforts in its entry as cited in the prior assignment of error. Mother's claim that the trial court did not make findings is thus inaccurate, and it is not well-taken. Therefore, her second assignment of error is overruled.

*Conclusion*

**{¶32}** Having found no error prejudicial to Mother in the particulars assigned and argued, her assignments of error are overruled and the judgments of the Hancock County Common Pleas Court, Juvenile Division, are affirmed.

***Judgments Affirmed***

**ZIMMERMAN and WILLAMOWSKI, J.J., concur.**

**/jlm**