[Cite as *In re J.J.*, 2023-Ohio-1209.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| | : | JUDGES: |
| IN THE MATTER OF: J.J. | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. William B. Hoffman, J. |
| | : | Hon. Andrew J. King, J. |
| | : | |
| | : | |
| | : | Case No. 2022 CA 00161 |
| | : | |
| | : | |
| | : | OPINION |

CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of
Common Pleas, Family Court Division,
Case No. 2020JCV01167

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     April 11, 2023

APPEARANCES:

For - Appellee

BRANDON J. WALTENBAUGH
STARK COUNTY JFS
402 2nd St. S.E.
Canton, OH 44702

For - Appellant

PAUL GRANT
209 S. Main Street, 8th Floor
Akron, OH 44038

*Gwin, P.J.*

{¶1} Appellant-mother ["Mother"] appeals the November 16, 2022 Judgment Entry of the Stark County Court of Common Pleas, Family Court Division that terminated her parental rights with respect to her minor child and granted permanent custody of the child to appellee, Stark County Department of Jobs and Family Services (hereinafter "SCJFS").

*Facts and Procedural History*

{¶2} On November 5, 2020, SCJFS filed a complaint alleging the dependency, neglect, and/or abuse of the child (b. 05.15.2017). Appellant-mother is the biological mother of the child. On the same day, the trial court held an emergency shelter care hearing and found that probable cause existed for the involvement of SCJFS, SCJFS had engaged in reasonable efforts to prevent the need for the removal of the child, and continued residence of the child with Mother was contrary to the child's best interest. The court approved and adopted the pre-adjudicatory orders requested by SCJFS, and granted temporary custody of the child to SCJFS.

{¶3} On February 2, 2021, the trial court found the child to be abused and placed the child in the temporary custody of SCJFS. The trial court also approved and adopted the initial case plan, found that SCJFS had made reasonable efforts to finalize the permanency planning in effect, and compelling reasons existed to preclude a filing of permanent custody. [Docket Entry No. 44].

{¶4} On April 29, 2021, the trial court reviewed the case. The court found that Mother was working to complete her assessment at Lighthouse. The court further found that Mother was not employed but she did have a "Section 8 voucher" and was looking

for independent housing. The court noted that the child was referred to trauma focused play therapy as a result of disclosing sexual abuse by the Father. Mother's visitation with the child was going "O.K." and was scheduled for every week. It was noted that Mother brings appropriate supplies to the visits. Mother was attending outpatient treatment at CommQuest and has completed clean drug screens. Mother was noted to be taking an independent parenting class. *Judgement Entry*, filed Apr 29, 2021. [Docket Entry No. 55].

{¶5} On July 6, 2021, SCJFS filed a motion for immediate review. [Docket Entry No. 61]. SCJFS requested that Mother's visitation be reduced to one visit per month. As grounds, it was alleged that the child was experiencing extreme emotional distress and engaging in self-injurious behavior. Id.

{¶6} By Judgment Entry filed July 7, 2021, the court reduced Mother's parenting time and ordered her to engage in the child's therapy if recommended by her therapist. [Docket Entry No. 63].

{¶7} On August 16, 2021, the Guardian ad Litem ["GAL"] filed a motion for immediate review. [Docket Entry No. 70]. The motion alleged that the child has continued to engage in self-harming behavior. The GAL asked the court to order all visits between the child and Mother be held in a therapeutic setting. Id. By Judgment Entry filed August 19, 2021 the court found that Mother was willing to agree to therapeutic visits and that any further changes be at the recommendations of the child's therapists. [Docket Entry No. 71].

{¶8} The court conducted review hearings every 6 months and found SCJFS had made reasonable efforts to prevent continued removal from the home.

{¶9}   On March 28, 2022, SCJFS filed a motion seeking permanent custody of the child. [Docket Entry No. 95].

{¶10}  On July 15, 2022, Mother and Father filed a Motion for Change of Legal Custody to the Maternal Grandmother.

{¶11}  On November 15, 2022, the trial court heard evidence on the motion requesting permanent custody of the child and the motion to change legal custody to the maternal grandmother.

*Permanent Custody trial*

{¶12}  Caseworker Amy Craig testified that she was assigned to the case on November 12, 2020. Ms. Craig testified that the original complaint in the case was filed on November 5, 2020. The original concerns included the sexual abuse of the child by Father, Mother leaving Ohio with the child and Father despite the sexual abuse, and Mother not believing the concerns. Ms. Craig testified that the child was adjudicated abused on February 2, 2021, and placed into the temporary custody of SCJFS on the same day. Ms. Craig testified that the child remained in the temporary custody of SCJFS continuously since that day.

{¶13}  Ms. Craig testified that she developed the initial case plan. Mother was ordered to complete a parenting assessment, follow all recommendations, complete comprehensive mental health treatment, participate in joint counseling with the child if her counselor found it appropriate, successfully complete parenting classes, and not engage in poor relationships.

{¶14}  Ms. Craig testified that Mother did not successfully complete parenting classes. Mother failed the class because she failed to acknowledge/accept that the child

was abused, lacked appropriate boundaries, and the parenting staff had "grave concerns" with Mother's ability to safely parent the child in the future.

{¶15} However, Ms. Craig acknowledged that Mother was instructed by her attorney to not participate in Goodwill Parenting while criminal charges are pending. T. at 16. Ms. Craig disputed telling Mother she would never receive custody of the child back if she did not complete Goodwill Parenting.

{¶16} Ms. Craig testified that Mother initially participated in joint counseling with the child; however, it was decreased due to the child engaging in self-harm after the visits. Ms. Craig testified that the counselling was not benefiting the child, and Mother suggested that Father should be included in counseling sessions. A judgment entry from Father's conviction for felony Child Endangering was admitted into evidence.[1]

{¶17} After recommendation by the child's counselor, visitation between Mother and the child was stopped by the trial court on September 29, 2022. Ms. Craig testified that Mother married a man during the case who was violent with her, and whom Mother believed was a perpetrator of sexual abuse. T. at 12; 15. Ms. Craig testified that the child would be at risk if Mother regained custody of the child. The marriage was subsequently annulled.

{¶18} Ms. Craig testified that she had made exhaustive efforts to help Mother complete her case plan services. She had multiple meetings with Mother to explain the status of the case, made several home visits, met with Mother at her office, and offered

---

[1] Stark County Court of Common Pleas, Case No. 2021CR0865. The judgment entry notes that the trial court permitted the state to amend the Rape charge to Endangering Children in violation of R.C. 2919.22(A)(E)(2)(c), a felony of the third degree.

bus passes to Mother.  Despite these efforts, Mother did not make significant progress in her case plan services.

{¶19}  Dr. Aimee Thomas testified for SCJFS.  All parties stipulated to Dr. Thomas being qualified as an expert witness.  Dr. Thomas testified that she conducted a parenting evaluation on Mother.  The evaluation was admitted into evidence.  Plaintiff's Exhibit 1.

{¶20}  Dr. Thomas testified that she was concerned with Mother's exposure of the child to inappropriate men.   She was concerned that Mother continued to question whether the child was sexually abused.  Dr. Thomas testified that she was concerned with Mother's history of relationships with abusive men.

{¶21}  Dr. Thomas testified that Mother did not appear to have insight into the risk other people could pose to the child.  Mother was also sexually abused as a child under the care of Maternal Grandmother.  Dr. Thomas testified that Mother had symptoms of post-traumatic stress disorder, depression, and dependent personality disorder.  Dr. Thomas recommended Mother engage in weekly individual counseling to address healthy boundaries, participate in a psychiatric evaluation, successfully complete parenting classes, and demonstrate the ability to live independently.

{¶22}  Dr. Thomas also recommended Goodwill offer additional support and assistance due to Mother's intellectual ability.  T. at 28; 29.  Dr. Thomas recommended that Goodwill offers more repetition, more hands-on learning, and assistance with questions for testing being read to her.  Dr. Thomas is not aware if Goodwill followed her recommendations for additional assistance for Mother.  T. at 29-30.

{¶23}  Dr. Thomas expressed concerns regarding Mother's financial dependence on others for housing and financial support.  Mother receives SSI.  However, there is

nothing in the record regarding any services provided to Mother to address any financial or housing concerns.

{¶24} Dr. Thomas testified that she believed Mother's prognosis is "poor" due to her history, poor judgment, and poor boundaries.

{¶25} SCJFS presented testimony regarding the best interest of the child. Ms. Craig testified that the child does not have any medical or developmental issues. Ms. Craig testified that the child had significant behavioral issues, had sexually acted out in her foster home, had been verbally and physically aggressive in her foster home, and had engaged in self-harming behavior. The child was in treatment to address the issues. Mother had participated in joint counseling with the child until visitation was suspended by the trial court, at the recommendation of the child's counselor.

{¶26} Ms. Craig testified that the child was doing "very well" in her current foster placement and was growing and making strides. Ms. Craig testified that she had identified a potential adoptive placement for the child. Ms. Craig testified that the child's counselor did not believe the child had "real attachment" to Mother.

{¶27} The child is adoptable. Ms. Craig testified that permanent custody was in the child's best interest, and that the benefit of permanent custody would outweigh any detrimental impact of severing the parental bond. Ms. Craig testified that she had explored multiple relative placements, all of which were denied for various reasons. One of the relatives denied was Maternal Grandmother. Ms. Craig testified that she initiated an ICPC due to Maternal Grandmother residing in Florida[2]. Maternal Grandmother's ICPC was denied by Florida due to her history with children services agencies involving

---

[2] Interstate Compact for Placement of Children

losing custody of her own children over twenty years ago. Ms. Craig testified that, once another state denies an ICPC, SCJFS cannot overturn the denial.

{¶28} The GAL testified that permanent custody was in the child's best interest.

{¶29} On November 16, 2022, the trial court issued its findings of fact granting permanent custody of the child to SCJFS, denying Mother's motion to change legal custody of the child to Maternal Grandmother, and terminating the parental rights of Mother. Specifically, the trial court found that, despite reasonable efforts by SCJFS, the child could not and should not be placed with Mother within a reasonable amount of time, the child had been in the temporary custody of SCJFS for 12 or more months in a consecutive 22-month period, and the grant of permanent custody was in the child's best interest. The trial court further found that the motion to change legal custody of the child to Maternal Grandmother was not in the child's best interest.

*Assignments of Error*

{¶30} Mother raises two Assignments of Error,

{¶31} "I.   THE TRIAL COURT'S DECISION TO TERMINATE PARENTAL RIGHTS WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶32} "II.   THE TRIAL COURT ERRED BY NOT GRANTING THE PARENT'S MOTION FOR LEGAL CUSTODY TO MATERNAL GRANDPARENTS."

**Standard of Appellate Review**

{¶33} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169(1990), *quoting Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551(1972). A parent's interest in the care, custody,

and management of his or her child is "fundamental." Id.; *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599(1982). The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." *In re Smith,* 77 Ohio App.3d 1, 16, 601 N.E.2d 45(6th Dist. 1991). Therefore, parents "must be afforded every procedural and substantive protection the law allows." Id. An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B)(1).

**{¶34}** The Ohio Supreme Court has delineated our standard of review as follows, "clear and convincing evidence" is "[t]he measures or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986). In *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954), the Supreme Court further cautioned,

> The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is*

*in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland,* 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added). A court of appeals will affirm the trial court's findings "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re Adkins,* 5th Dist. Nos. 2005AP06–0044 and 2005AP07–0049, 2006-Ohio-431, 2006 WL 242557, ¶17.

**Requirements for Permanent Custody Awards**

{¶35} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶36} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies

for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b) the child is abandoned;

(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

**{¶37}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

## Temporary Custody for at least 12 out of a consecutive 22-month period- R.C. 2151.414(B) (1) (d).

**{¶38}** The "12 of 22" provisions set forth in R.C. 2151.413(D)(1) and R.C. 2151.414(B)(1)(d) balance the importance of reuniting a child with the child's parents against the importance of a speedy resolution of the custody of a child. *In re C.W.,* 104 Ohio St.3d 163, 2004–Ohio–6411, 818 N.E.2d 1176, ¶22. Through the "12 of 22" provisions in the permanent-custody statutes, the legislature provides parents with 12 months to work toward reunification before an agency can institute a permanent-custody action asserting R.C. 2151.414(B)(1)(d) grounds. Id.

**{¶39}** "Before a public children-services agency or private child-placing agency can move for permanent custody of a child on R.C. 2151.414(B)(1)(d) grounds, the child must have been in the temporary custody of an agency for at least 12 months of a consecutive 22-month period." *In re: C.W.,* 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176 at paragraph one of the syllabus. When calculating this time period, the Court in *C.W.* cautioned, "the time that passes between the filing of a motion for permanent custody and the permanent-custody hearing does not count toward the 12-month period set forth in R.C. 2151.414(B)(1)(d)." Id. at 167, 2004-Ohio-6411, 818 N.E.2d at 1180, ¶26.

**{¶40}** R.C. 2151.414(B)(1)(e) states that, "[f]or the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."

**{¶41}** Testimony was presented that the child was removed from Mother's home on November 5, 2020. Pursuant to R.C. 2151.414(B)(1)(e) sixty days from November 5, 2020 would be January 4, 2021.  The juvenile court adjudicated the child as an abused child by Judgment Entry filed February 2, 2021.

**{¶42}** Accordingly, the "earlier date" that the child will be deemed to have enter the temporary custody of SCJFS for purposes of R.C. 2151.414(B)(1)(d) is January 4, 2021.  SCJFS filed the Motion for Permanent custody on March 28, 2022, 1 year, 2 months and 25 days after the child is considered to have entered the temporary custody of SCJFS.

**{¶43}** Accordingly, the trial court correctly found that the child had been in the temporary custody of the SCJFS for over twelve months of a consecutive 22-month period.

**{¶44}** As findings under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(d) are alternative findings, each is independently sufficient to use as a basis to grant the motion for permanent custody.  *In re Daltoni*, 5th Dist. Tuscarawas No. 2007 AP 0041, 2007-Ohio-5805.  This finding alone, in conjunction with a best interest finding, is sufficient to support the grant of permanent custody.  *In re Calhoun*, 5th Dist. Stark No. 2008CA00118, 2008-Ohio-5458.

**{¶45}** Because Mother has not challenged the twelve of twenty-two-month finding as to the child, we would not need to address the merits of Mother's assignments of error. However, even if we consider Mother's arguments the trial court did not err in determining the child cannot be placed with Mother at this time or within a reasonable time.

**Parental Placement within a Reasonable Time– R.C. 2151.414(B)(1)(a)**

{¶46} The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.414(E). The statute also indicates that if the court makes a finding under R.C. 2151.414(E)(1)-(15), the court shall determine the children cannot or should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. *See In re William S.*, 75 Ohio St.3d 95, 1996–Ohio–182, 661 N.E.2d 738; *In re Hurlow*, 4th Dist. Gallia No. 98 CA 6, 1997 WL 701328 (Sept. 21, 1998); *In re Butcher,* 4th Dist. Athens No. 1470, 1991 WL 62145(Apr. 10, 1991).

{¶47} R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows:

> (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the

Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.  In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.

* * *

(16) Any other factor the court considers relevant.

**{¶48}** As set forth above, the trial court's findings are based upon competent credible evidence.  The record includes the recommendation of the guardian ad litem for the child, and the testimony of the witnesses at trial.  The trial judge was in the best position to determine the credibility of the witnesses.

**{¶49}** The juvenile court found that SCJFS had made reasonable efforts to prevent the removal, to eliminate the continued removal, or to make it possible for the

child to return home safely to Mother's home. The record supports the juvenile court's finding that Mother has not shown consistent sustained progress to have the child returned to her custody.

{¶50} The testimony presented during the permanent custody trial establishes that the Mother continues to struggle with exposure of the child to inappropriate men. Dr. Thomas testified that Mother did not appear to have insight into the risk other people could pose to the child.

{¶51} Dr. Thomas testified that Mother has symptoms of post-traumatic stress disorder, depression, and dependent personality disorder. Dr. Thomas testified that she believed Mother's prognosis is "poor" due to her history, poor judgment, and poor boundaries. Mother reported to Dr. Thomas there was DNA evidence to support the allegations against Father but she continues to question whether Father abused the child and continued to maintain contact with him and the child in another state.

{¶52} Dr. Thomas stated that Mother has a verbal IQ of 72, a non-verbal IQ of 77 and her full IQ was 71. Mother is functioning at a verbal level of an eight-year-old and non-verbal level of an eleven-year-old. Mother was sexually assaulted at the age of fourteen by her brother. Mother was also raised by a mother that was addicted to drugs and her father was incarcerated.

{¶53} Caseworker Craig stated the only case plan objective Mother successfully completed was counseling. The GAL believes the court should grant permanent custody because of concerns regarding Mother's ability to safely parent the child.

{¶54} It does not appear that Mother has been able to apply any behavioral changes that she has attempted to learn. Despite offering numerous services, Mother

was unable or unwilling to mitigate the concerns that led to the child's removal. As set forth in our *Statement of the Facts and Case, supra*, we find there was sufficient and substantial competent evidence Mother failed to remedy the problems which initially caused the removal of the child from her home.

{¶55} In the case of *in re: Summerfield*, 5th Dist. Stark No. 2005CA00139, 2005-Ohio-5523, this Court found where, despite marginal compliance with some aspects of the case plan, the exact problems that led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time.

{¶56} The evidence demonstrated the very little successful efforts Mother had made on the case plan. On that point, the evidence demonstrates that any improvement that Mother has made in her life is tentative and, perhaps, temporary, and that she is at risk of relapse. The trial court found that Mother is not able to be a successful parent to the child.

{¶57} We find there is competent and credible evidence to support the trial court's determination that the child cannot be placed with Mother within a reasonable time or should not be placed with Mother.

### Reasonable Efforts

{¶58} Mother further contends the finding that SCJFS made reasonable efforts to reunify the child with Mother is against the manifest weight of the evidence.

{¶59} The Supreme Court of Ohio in *In re C.F.*, 113 Ohio St.3d 73, 78, 862 N.E.2d 816, 821(2007) noted,

[N]o one section of the Revised Code addresses the concept of reasonable efforts. Overall, Ohio's child-welfare laws are designed to care for and protect children, 'whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety.' R.C. 2151. 01(A). To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit. For example, R.C. 2151. 412 requires the agency to prepare and maintain a case plan for children in temporary custody with the goal 'to eliminate with all due speed the need for the out-of-home placement so that the child can safely return home.' Under R.C. 2151.413(D)(3)(b), an agency may not file for permanent custody under R.C. 2151. 413(D) - the '12 months out of 22 rule'- '[i]f reasonable efforts to return the child to the child's home are required under section 2151.419' and the agency has not provided the services required by the case plan.

{¶60} A "reasonable effort" is "* * * an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage." *In re Weaver*, 79 Ohio App.3d 59, 63, 606 N.E.2d 1011(12th Dist. 1992). The issue is not whether there was anything more the agency could have done, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances of the case. *In re J.D.*, 3rd Dist. Hancock Nos. 5-10-34, 2011-Ohio-1458. The child's health and safety are paramount in determining whether reasonable efforts were made. *In re R.P.*, 5th Dist. Tuscarawas No. 2011-Ohio-5378.

**{¶61}**  R.C. 2151.419 requires the trial court to determine whether the agency filing the complaint for custody "has made reasonable efforts * * * to eliminate the continued removal of the child from his home, or to make it possible for the child to return home." Subsection (B)(1) mandates the trial court to issue written findings of fact setting forth the reasonable efforts made by the agency, including a brief description of "the relevant services provided by the agency to the family of the child and why those services did not prevent the removal of the child from his home or enable the child to return home."

**{¶62}**  However, even where a trial court has failed to include in its judgment entry, the findings contemplated by R.C. 2151.419(B)(1) we have found that the ultimate issue is the reasonableness of the Department's efforts, and have concluded those efforts may be determined from the record. *In the matter of Kell/Bess Children*, 5th Dist. No. 97CA0278, 1998 WL 401767(Mar. 23, 1998); *Hunt v. Ickes*, 5th Dist. Tuscarawas No. 2014 AP 08 0032, 2015-Ohio-309, ¶19.

**{¶63}**  We find there is competent and credible evidence to support the trial court's determination that SCJFS efforts were reasonable and diligent under the circumstances of the case.  We find that the record supports that SCJFS was working toward the goal of reunification.  We find no evidence of dishonest purpose, conscious wrongdoing, or breach of duty on the part of SCJFS.

**{¶64}**  Having reviewed the record, we find that SCJFS made a good faith effort to reunify Mother and her child.  Furthermore, the record contains clear and convincing evidence to support the court's determination that the child could not be placed with Mother.

**{¶65}** We find that the trial court's determination that Mother had failed to remedy the issues that caused the initial removal and therefore the child could not be placed with her within a reasonable time or should not be placed with her was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence.

**{¶66}** We further find the trial court correctly found that the child had been in the temporary custody of the SCJFS for over twelve months of a consecutive 22-month period.

II.

**{¶67}** In her Second Assignment of Error, Mother contends that the trial court abused its discretion by denying Mother's motion to have legal custody given to the maternal grandmother.

**Legal Custody and the Best Interest of the Child**

**{¶68}** The award of legal custody is "not as drastic a remedy as permanent custody." *In re L.D.*, 10th Dist. Franklin No. 12AP-985, 2013-Ohio-3214. This is because the award of legal custody does not divest parents of their residual rights, privileges, and responsibilities. *In re C.R.,* 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188.

**{¶69}** Before awarding legal custody to a non-parent, a trial court must ordinarily make a finding that each parent is unsuitable. *In re L.P.,* 5th Dist. Muskingum No. CT2016-0045, 2017-Ohio-52, *citing In re Hockstock*, 98 Ohio St.3d 238, 2002-Ohio-7208. This requirement does not apply, however, in cases involving abuse, neglect, or dependency. Id. The Ohio Supreme Court has held that, "[a] juvenile court adjudication of abuse, neglect, or dependency is a determination about the care and condition of a child and implicitly involves a determination of the unsuitability of the child's custodial

and/or noncustodial parents." *In re C.R.,* 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188. Thus, "[w]hen a juvenile court adjudicates a child to be abused, neglected, or dependent, it has no duty to make a separate finding at the dispositional hearing that a noncustodial parent is unsuitable before awarding legal custody to a nonparent." Id. In this case, the child was adjudicated abused. R.C. 2151.353(A) states, in pertinent part,

If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:

* * *

(3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings * * *.

**{¶70}** A trial court "must have wide latitude in considering all the evidence" and a custody decision will not be reversed absent an abuse of discretion. *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159, *citing Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988). As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the finder of fact could base its judgment. *Cross Truck Equip. Co. v. The Joseph A. Jeffries Co.*, 5th Dist. Stark No. CA5758, 1982 WL 2911 (Feb. 10, 1982). Accordingly, judgments supported by some competent and credible evidence going to all the essential elements of the case will not be reversed as being

against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶71}** Unlike in a permanent custody proceeding where a juvenile court's standard of review is by clear and convincing evidence, the standard of review in legal custody proceedings is a preponderance of the evidence. *In re S.D.,* 5th Dist. Stark Nos. 2013CA0081, 2013CA0082, 2013-Ohio-5752.

**{¶72}** Issues relating to the credibility of the witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility "is crucial in a child custody case, where there may be as much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159.

**{¶73}** The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, and a trial court must base its decision on the best interest of the child. *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188; *In re P.S.*, 5th Dist. Stark No. 2012CA00007, 2012-Ohio-3431. When determining the issue of legal custody, the trial court should consider the totality of the circumstances. *In re D.T.,* 5th Dist. Stark No. 2013CA00252, 2014-Ohio-2495. Trial courts should consider all factors relevant to the best interest of the child. Id. This may include the best interest factors contained in R.C. 2151.414(D) and/or R.C. 3109.4(F), including: the wishes of the child (expressed to the court or through the GAL) and the child's parents; the child's interactions and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child; the custodial history of the child; the child's need

for a legally secure placement; the child's adjustment to their home, school, and community; the mental and physical health of all persons involved in the situation; and the person more likely to facilitate court-approved parenting time rights or visitation.

{¶74}  An agency that seeks permanent custody of a child bears the burden of proving by clear and convincing evidence that the grant of permanent custody is in the child's best interest.  *In re B.C.,* 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 26.

{¶75}  The factors in R.C. 2151.414(E)(7) through (11), which are referred to in R.C. 2151.414(D)(1)(e), involve a parent's having been convicted of or pleaded guilty to specific criminal offenses against the child, the child's sibling or another child who lived in the parent's household; a parent's withholding medical treatment or food from the child; a parent's repeatedly placing the child at substantial risk of harm because of alcohol or drug abuse; a parent's abandoning the child; and a parent's having had parental rights as to the child's sibling involuntarily terminated.

{¶76}  No one element is given greater weight or heightened significance.  *In re C.F.,* 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816.  R.C. 2151.414(D)(1) does not require a juvenile court to make specific findings regarding each best-interest factor listed in R.C. 2151.414(D)(1) or to include in its decision or judgment entry a written discussion of each of those factors.  *In re: A.M.,* 166 Ohio St.3d 127, 2020-Ohio-5102, 184 N.E.3d 1, ¶33.

{¶77}  A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security.  We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent

custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children,* 5th Dist. No. 2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), *citing In re Awkal,* 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist. 1994).

**{¶78}** There is no dispute Mother made minimal progress toward completion of portions of her case plan, but the primary goal is not to simply complete the case plan. *In re T.H.,* 5th Dist. Muskingum No. CT2016-0009, 2016-Ohio-7312, ¶ 42. Even the successful completion of a case plan is not dispositive on the issue of reunification. *In re W.A.J.*, 8th Dist. Cuyahoga No. 99813, 2014-Ohio-604. Where a parent has participated in his or her case plan and completed most or all the plan requirements, a trial court may still properly determine that such parent has not substantially remedied the problems leading to agency involvement. *In the Matter of A.L. and J.L.*, 5th Dist. Guernsey No. 11 CA 23, 2012-Ohio-481. While it may be in Mother's best interest to complete the case plan, this is only one factor for a trial court to consider in the best interest of the child, and, "in legal custody cases, trial courts should consider all factors relevant to the best interest of the child." *In the Matter of D.P. and G.P.,* 5th Dist. Stark No. 2010CA00348, 2011-Ohio-1907.

**{¶79}** The issue in this case is whether the preponderance of the evidence demonstrated it was in the best interest of the child to grant legal custody to the Maternal Grandmother.

**{¶80}** Ms. Craig testified that she had explored multiple relative placements, all of which were denied for various reasons. Ms. Craig testified that one of the relatives denied

was Maternal Grandmother. Ms. Craig testified that she initiated an ICPC due to Maternal Grandmother residing in Florida. Ms. Craig testified that Maternal Grandmother's ICPC was denied by Florida due to her history with children services agencies losing custody of her own children over twenty years ago. Ms. Craig testified that, once another state denies an ICPC, SCJFS cannot overturn the denial.

{¶81} Maternal grandmother and her spouse provided testimony in support of Mother's Motion for Legal custody. The couple have resided in Dade City, Florida in a mobile home park for people fifty-five and over for the last two years. They have a room prepared for the child in their mobile home. Both testified they have the resources and means to care for the child and are able and willing to keep her until she is eighteen. Both testified that they are aware of the child's mental health issues and are prepared to handle those.

{¶82} Both contacted the Agency early in the case and were interested in taking the child. An ICPC was conducted in Florida; however, they were denied. Caseworker Craig testified the reason for the denial was their history with the Agency. Maternal grandmother's spouse testified regarding the circumstances surrounding her losing custody of her children. She testified that she made mistakes when she was younger. She further indicated that she voluntarily relinquished permanent custody and that her father subsequently adopted her children. She testified that she has gotten help since this occurred and has changed.

{¶83} The GAL testified that the timeframe for the prior agency cases were from 1983 to 1998 for Maternal Grandmother and for her spouse from 1991 to 1997.

{¶84} The couple further testified that they have an established relationship with the child. The Maternal Grandmother testified that she was very involved with the child during the child's first year. She indicated that the child and the mother had resided with them prior to Maternal Grandmother moving to Florida.

{¶85} The trial court found that,

Neither [the Maternal Grandmother] nor [her spouse] have demonstrated any understanding of [the child's] significant mental health and emotional needs. Their inability to acknowledge the risks that mother presents would place [the child] at risk if they were legal custodians.

{¶86} After reviewing the record and the elements of R.C. 2515.414(D) regarding the best interest of the child, we conclude that the trial court did not abuse its discretion when it determined that Mother has failed to remedy the problems that caused the removal of the child from the home and that it was in the best interest of the child to grant legal custody to SCJFS. In addition, the Guardian ad Litem recommended that the permanent custody of the child be granted to the Agency. In short, the juvenile court's judgment entry demonstrates that the court satisfied its statutory duty to consider the best interest factors set out in R.C. 2151.414(D)(1)(a) through (e).

{¶87} Finally, we further find that the trial court's decision that permanent custody to SCJFS was in the child's best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

**Conclusion**

{¶88} For these reasons, we find that the trial court's determination that Mother had failed to remedy the issues that caused the initial removal and therefore the child

could not be placed with her within a reasonable time or should not be placed with her was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence.

{¶89} We further find the trial court correctly found that the child had been in the temporary custody of the SCJFS for over twelve months of a consecutive 22-month period.

{¶90} We further find that the trial court did not err or abuse its discretion in overruling Mother's motion to change legal custody to the Maternal Grandmother.

{¶91} Finally, we find that the trial court's decision that permanent custody to SCJFS was in the child's best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

{¶92} Because the evidence in the record supports the trial court's judgment, we overrule Appellant-Mother's two assignments of error, and affirm the decision of the Stark County Court of Common Pleas, Family Court Division.

By Gwin, P.J.,

Hoffman, J., and

King, J., concur

[Cite as *In re J.J.*, 2023-Ohio-1209.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

IN THE MATTER OF: J.J.            :
:
:
:
:
:
:          JUDGMENT ENTRY
:
:
:
:          CASE NO. 2022 CA 00161

For the reasons stated in our accompanying Memorandum-Opinion, we overrule Appellant-Mother's two assignments of error, and affirm the decision of the Stark County Court of Common Pleas, Family Court Division. Costs to appellant.

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. ANDREW J. KING